**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Leabert George GRANT, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2009.

Filed March 23, 2010.

William C. Kaczynski, Pittsburgh, for appellant.

Margaret Ivory, Assistant District Attorney, Pittsburgh, Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BOWES, DONOHUE and POPOVICH, JJ.

OPINION BY DONOHUE, J.:

¶ 1 Appellant Leabert George Grant ("Grant") appeals from the PCRA court's dismissal of his Amended Petition for Post Conviction Relief and Petition for Writ of *Habeas Corpus*. Grant contends that his constitutional rights were violated when the PCRA court refused to grant him a new trial after it was discovered that he was represented at trial by someone who was not licensed to practice law because of his repeated failure to fulfill mandatory continuing legal education requirements.

For the reasons set forth herein, we conclude that Grant's rights to the assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution were violated. Accordingly, we reverse the order of the PCRA court dated April 4, 2008, vacate the judgment of sentence dated August 16, 2004, and remand for a new trial.

¶ 2 On April 18, 2003, Grant was arrested and charged with one count each of rape, statutory sexual assault, indecent assault, and corruption of minors, and two counts of aggravated indecent assault of a child,[1] all in relation to an incident that occurred on January 18, 2003, while the victim was babysitting her cousin's four children and Grant's twin daughters. On July 10, 2003, he was formally arraigned, and on the same date William E. Papas ("Papas") entered his appearance as a privately retained attorney representing Grant. On March 24, 2004, Grant waived his right to a jury trial and was tried before the Honorable Kathleen A. Durkin of the Court of Common Pleas of Allegheny County. At trial, the Commonwealth presented testimony from the victim, her cousin, and her mother. The defense presented the testimony of Grant, his twin daughters, and his employer (as a character witness). Following trial, Grant was convicted of all charges.

¶ 3 Sentencing was scheduled for June 8, 2004, but Papas failed to appear. Sentencing was rescheduled for August 16, 2004, and on that date Judge Durkin made the following statement on the record:

Sentencing was originally scheduled for June 8, 2004, and a pre-sentence report was ordered. The attorney, Mr. Grant's at that time was William Pappas [sic]. He did not appear at that date. His

---

1. 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3126(a)(8), 6301 and 3125(a)(8), respectively.

whereabouts were unknown. After checking around with the Disciplinary Board, we discovered that Attorney Pappas [sic] was on inactive status for several years. . . .

Notes of Testimony ("N.T."), 8/16/04, at 2–3. New privately-retained counsel appeared on behalf of Grant and moved the trial court for extraordinary relief—requesting a new trial on the basis of Papas' ineffectiveness for holding himself out as a lawyer at a time when he was not licensed to practice law in Pennsylvania. *Id.* at 3–4. Judge Durkin denied the motion and sentenced Grant on the rape conviction to a term of not less than five years or more than ten years of imprisonment. No further penalties were imposed for the remaining convictions.

¶ 4 Grant filed a direct appeal with this Court, raising two issues relating to the sufficiency of the evidence and two issues related to Papas' ineffective assistance of counsel. We denied as meritless his claims relating to the sufficiency of the evidence and deferred to the PCRA stage his ineffectiveness claims. With respect to the latter, we stated that "[Grant] can raise the claims of ineffectiveness presented herein and any other such claims in a PCRA petition, wherein the PCRA court will be in a position to ensure that [Grant] receives an evidentiary hearing on his claims, if necessary." *Commonwealth v. Grant*, 909 A.2d 871 (Pa.Super.2006) (unpublished memorandum).

¶ 5 Grant then filed a timely *pro se* petition pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. Counsel was appointed and on October 24, 2007, an Amended Petition for Post–Conviction Collateral Relief and Petition for Writ of *Habeas Corpus* (the "PCRA Petition") was filed. The PCRA Petition sets forth in detail his claims of ineffective assistance of counsel by Papas,

and has attached to it the affidavits of three witnesses who would testify at an evidentiary hearing. In addition, attached as exhibits A, C and D are two reports/recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania and an order of disbarment. Based upon these documents, as well as the docket entries and transcripts in the record, the following timeline of Papas' misdeeds may be established for purposes of this appeal:

4/20/88: Papas is suspended from the practice of law for criminal convictions for the possession of cocaine, marijuana, and paraphernalia. (PCRA Petition, Exhibit A, p. 3).

8/23/89: Reinstatement granted. (PCRA Petition, Exhibit A, p. 3).

3/17/00: By Order of the Supreme Court of Pennsylvania dated March 17, 2000, with an effective date of April 18, 2000, served by certified letter, Papas is formally advised by the Pennsylvania Disciplinary Board that in order to resume active status he would have to comply with Continuing Legal Education ("CLE") requirements before a request for reinstatement to the Disciplinary Board would be considered. (PCRA Petition, Exhibit C, p. 4)

4/18/00: Papas is transferred to inactive status for failure to fulfill his CLE requirements or successfully apply for reinstatement, thus prohibiting him from practicing law until reinstated to active status. (PCRA Petition, Exhibit C, pp. 3–4)

6/18/01: Papas improperly represents a Mr. Koutsouflakis while on inactive status without informing his client of his inability to practice law. (PCRA Petition, Exhibit A, pp. 5–6)

11/1/01: Papas improperly represents a Mr. Wolfram while on inactive status without informing his client of his ina-

bility to practice law. (PCRA Petition, Exhibit A, pp. 7–8)

11/1/01: Papas improperly represents a Mr. Fischer while on inactive status, without informing his client of his inability to practice law. (PCRA Petition, Exhibit A, p. 8)

7/10/03: Papas enters his appearance on behalf of Grant.

11/14/03: Papas attends a disciplinary hearing before a hearing committee of the Disciplinary Board, at which time he is again informed by Disciplinary Counsel that he is to cease and desist from representing clients and from holding himself out as an attorney permitted to practice law. (PCRA Petition, Exhibit C, p. 5)

3/24/04: Papas represents Grant in his non-jury trial.

6/8/04: Papas fails to appear for Grant's sentencing hearing.

8/16/04: Judge Durkin denies Grant's motion for a new trial on the grounds of ineffective assistance of counsel.

3/4/05: The Disciplinary Board sends Papas four formal letters of inquiry comprising 13 separate instances of his continuing violation of the Rules of Professional Conduct and Rule of Disciplinary Enforcement by engaging in the unauthorized practice of law while on inactive status. (PCRA Petition, Exhibit C, pp. 5–6).

9/12/05: Papas is suspended by the Supreme Court of Pennsylvania for a period of two years as a result of his unlawful representation of Koutsouflakis, Wolfram and Fischer while on inactive status, combined with other acts of client neglect and dishonest conduct. (PCRA Petition, Exhibit B, *Per Curiam* Order).

11/1/05: Papas is found to be in contempt by the Pennsylvania Supreme Court for his willful violation of the Supreme Court's Order of March 17, 2000, and his repeated and continuing practice of law while in violation of the Supreme Court's prohibition. (PCRA Petition, Exhibit C, p. 6).

11/21/06: Papas is disbarred by order of the Supreme Court of Pennsylvania. (PCRA Petition, Exhibit D, *Per Curiam* Order).

¶ 6 On March 13, 2008, the Commonwealth filed its response to Grant's PCRA Petition, and the next day (March 14, 2008) the PCRA court filed a notice of intent to dismiss without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. On April 2, 2008, Grant filed a response to the Rule 907 notice, but the next day (April 3, 2008), the PCRA court dismissed Grant's PCRA Petition without an evidentiary hearing.

¶ 7 This timely appeal followed, in which Grant raises the following three issues for our consideration:

I. Whether [Grant] was improperly denied his constitutional rights to the assistance of counsel, due process and fair trial when he unwittingly was represented at trial by someone whose license to practice law had been revoked due to flagrant longterm refusal to attend mandatory continuing legal education.

II. Whether trial counsel was ineffective in failing to secure the services of a patois-creole interpreter for trial, given [Grant's] difficulty in reading and understanding colloquial American English.

III. Trial counsel was ineffective in coercing [Grant] into involuntarily waiving his right to jury trial by his obvious unpreparedness for jury trial and by improperly advising him shortly before commencement of jury selection that the

jury panel was "all white" and that therefore it would convict him because of his race.

Appellant's Brief at 5.

¶ 8 Our standard of review for a decision of a PCRA court in dismissing a PCRA petition is well-settled: "In reviewing the propriety of [a] PCRA court's order, we are limited to determining whether the court's findings are supported by the record and whether the order in question is free of legal error." *Commonwealth v. Geer*, 936 A.2d 1075, 1077 (Pa.Super.2007) (citing *Commonwealth v. Halley*, 582 Pa. 164, 170 n. 2, 870 A.2d 795, 799 n. 2 (2005)), *appeal denied*, 597 Pa. 703, 948 A.2d 803 (2008). "The PCRA court's findings will not be disturbed if there is any support for the findings in the certified record." *Id.* (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super.2001)).

¶ 9 With respect to Grant's first issue on appeal, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."[2] According to the United States Supreme Court, the Sixth Amendment provides the accused with the right to the effective assistance of counsel at all critical stages of a criminal proceeding, including the pre-trial stages, trial, and sentencing. *Strickland v. Washington*, 466 U.S. 668, 684–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Assistance of counsel is mandated by the Sixth Amendment because lawyers "are the

means through which the other rights of the person on trial are secured," and through which the prosecution's case is subjected to "meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 653–56, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

¶ 10 In *Strickland*, the United States Supreme Court ruled that a defendant must typically plead and prove two elements in order to gain relief for ineffective assistance of counsel under the Sixth Amendment: (1) that his "counsel's performance was deficient," and (2) that the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *see also Commonwealth v. Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987). To demonstrate "actual" prejudice under the second element of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

¶ 11 In *Cronic*, a case decided on the same day as *Strickland*, the Supreme Court concluded that when there has been an actual or constructive denial of counsel, *i.e.*, when counsel's failure has been complete and it is as if the right to counsel has been wholly denied, prejudice may be presumed. *Cronic*, 466 U.S. at 659–662, 104 S.Ct. 2039; *see also Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). The Supreme Court of Pennsylvania has described the operation of

---

**2.** Article I, Section 9 of the Pennsylvania Constitution provides in relevant part that "[I]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel...." Our Supreme Court has held that with respect to the right to counsel, Article I, Section 9 provides the same level of protec-

tion to criminal defendants as does the Sixth Amendment. *Commonwealth v. Pierce*, 515 Pa. 153, 161, 527 A.2d 973, 976–77 (1987) ("identical textual and policy considerations logically lead us to hold that together they constitute an identical rule of law in this Commonwealth.").

*Cronic's* presumption of prejudice as follows:

> *Cronic* recognized that in some cases, the prejudice inquiry of *Strickland* is not required because there are certain circumstances 'that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' *Cronic* suggested that where there has been a complete denial of counsel or where the circumstances are such that any competent attorney would be unable to provide effective assistance, a defendant need not demonstrate that he was prejudiced by counsel's actions.

*Commonwealth v. Reaves*, 592 Pa. 134, 148, 923 A.2d 1119, 1128 (2007); *see also Commonwealth v. Mallory*, 596 Pa. 172, 194–95, 941 A.2d 686, 700, *cert. denied*, — U.S. —, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). In *Reaves*, our Supreme Court recognized that the presumption of prejudice has been found to apply in three circumstances: (1) where there was an actual or constructive denial of counsel, (2) where the state has interfered with counsel's assistance, and (3) where counsel had an actual conflict of interest. *Id.*

¶ 12 Grant contends that two of these three circumstances exist in his case, both of which entitle him to a presumption of prejudice. First, Grant argues that he was actually or constructively denied counsel. Second, Grant claims that his counsel had an actual conflict of interest that adversely affected his performance at trial.

¶ 13 With respect to the argument that he was actually or constructively denied counsel, Grant argues that the term "counsel" in the Sixth Amendment refers to "an individual duly licensed to practice law." Appellant's Brief at 27. Because Papas "was aware that he did not have a license to practice law at the time he represented [Grant] at trial, and that his license had been revoked," Grant contends that he was "therefore not represented by 'counsel,' and that failure entitles him to relief." *Id.*

¶ 14 To this end, Grant relies upon several state and federal cases to establish the existence of a *per se* rule mandating a finding of the violation of the Sixth Amendment when the defendant is not represented by a person licensed to practice law. *Solina v. United States*, 709 F.2d 160 (2d Cir.1983); *United States v. Novak*, 903 F.2d 883 (2d Cir.1990); *People v. Felder*, 47 N.Y.2d 287, 293, 418 N.Y.S.2d 295, 297, 391 N.E.2d 1274, 1275–76 (1979). In *Solina*, the defendant was represented by someone who left law school to enter military service during World War II.[3] Though he later returned to law school and received a bachelor of laws degree, he failed twice to pass the New York State bar examination and was never admitted to the practice of law in New York or any other state. The Second Circuit concluded

---

3. In *Solina*, as in the present case, the representation at issue was provided by someone privately retained by the defendant rather than appointed by the state. This distinction does not alter the defendant's Sixth Amendment rights:

> A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel.... The vital guarantee of the Sixth Amendment would stand for little if the often un-

informed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.

*Solina*, 709 F.2d at 165 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344–45, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

that Solina's Sixth Amendment right had been violated because the guarantee of assistance of counsel means, at the very least, "representation by a licensed practitioner." *Solina,* 709 F.2d at 167. Accordingly, the Second Circuit vacated Solina's conviction despite "overwhelming" evidence of his guilt and without any showing that he was prejudiced by the unlicensed representation. *Id.* at 163.

¶ 15 In *Novak,* the defendant retained Joel Steinberg ("Steinberg") in 1981 to represent him in anticipation of his arrest and indictment on drug charges. Steinberg had been admitted to the practice of law in New York in 1970. He had not taken the bar examination but had instead obtained a certificate of dispensation based upon his representation that his law school education had been interrupted by his service in the armed forces. In actuality, he had left law school in May 1964 and did not enter the armed forces until April 1965, and his departure from law school had been based upon "poor scholarship" rather than entry into military service. In 1987, Steinberg was disbarred for obtaining his admission to the bar by fraud. The Second Circuit, relying on its decision in *Solina,* concluded that Novak's Sixth Amendment rights had been violated:

> At the time of his admission to the bar, Steinberg had not met the State's normal substantive requirements for admission to the New York State Bar. His competence to practice law had never been tested, and he was not entitled to bypass such testing. Had the truth been known as to his early law-school career and the reason for its interruption, he plainly would have been denied admission to the bar unless he took the bar examination; had he taken the bar examination, there is no assurance that he would have passed. Thus here, as in *Solina,* there has been no foundation for an assumption that defense counsel had

the legal skills necessary to permit him to become a "duly admitted" member of the bar.

*Novak,* 903 F.2d at 890.

¶ 16 The New York State Court of Appeals has likewise interpreted the Sixth Amendment as guaranteeing "nothing less than a licensed attorney at law." *Felder,* 47 N.Y.2d at 293, 418 N.Y.S.2d at 297, 391 N.E.2d at 1276. In *Felder,* the court considered the convictions of four defendants represented by a person "who was not, and had never been, admitted to the Bar of this State or of any other jurisdiction and who had not completed law school or otherwise satisfied the prerequisites for the practice of law." *Id.* at 291–92, 418 N.Y.S.2d at 296, 391 N.E.2d at 1275. In each case, the lower courts had rejected the defendants' motions to vacate their convictions, ruling that the pseudo-attorney had been competent and that no prejudice had been shown. The Court of Appeals reversed, ruling that the harmless error analysis was misplaced since "[a] lay person, regardless of his educational qualifications or experience, is not a constitutionally acceptable substitute for a member of the Bar." *Id.* at 293, 418 N.Y.S.2d at 297, 391 N.E.2d at 1276; *see also Huckelbury v. State,* 337 So.2d 400 (Fla.App.1976) (conviction for first-degree murder and conspiracy to commit murder overturned where defendant was represented by public defender who was refused admission to the bar for lack of good moral character, despite graduation from accredited law school and receipt of a passing grade on the state bar examination).

¶ 17 In this case, the PCRA court refused to recognize a *per se* rule that an automatic violation of Sixth Amendment rights exists when a defendant is represented at trial by an unlicensed lawyer based upon two decisions from this Court,

*Commonwealth v. Jones,* 829 A.2d 345 (Pa.Super.2003), and *Commonwealth v. Bretz,* 830 A.2d 1273 (Pa.Super.2003). In these two cases, this Court found no violation of the right to counsel when counsel (the same lawyer in both cases) failed to pay his annual dues and thus had been placed on the inactive status list. We found instructive the decision of the Illinois Supreme Court when ruling on a substantially identical factual situation:

> [Appellant's] admission to the bar allows us to assume that he has the training, knowledge, and ability to represent a client who has chosen him, and that he has retained the ability to render effective assistance to defendant at trial, notwithstanding his suspension for failure to pay his registration dues. To find a defendant's [S]ixth [A]mendment right to counsel to have been violated, there must be additional factors above and beyond a mere suspension for nonpayment of bar dues.

*Bretz,* 830 A.2d at 1278 (quoting *People v. Brigham,* 151 Ill.2d 58, 70–71, 175 Ill.Dec. 720, 726–27, 600 N.E.2d 1178, 1184–85 (1992)).[4]

¶ 18 The PCRA court's reliance on *Jones* and *Bretz* in this case was misplaced. The failure to pay bar dues is a purely technical licensing defect unrelated to a person's competence to practice law. As the Illinois Supreme Court stated in *Brigham,* "lawyers who do not pay their dues violate a legal norm, but not one established for the protection of clients." *Brigham,* 151 Ill.2d at 65, 175 Ill.Dec. at 724, 600 N.E.2d at 1182 (quoting *Reese v.*

*Peters,* 926 F.2d 668, 669–70 (7th Cir. 1991)).

▮▮▮ ¶ 19 Courts have consistently distinguished between technical licensing defects and serious violations of bar regulations reflecting an incompetence to practice law. Where the attorney's license has been suspended or his/her credentials to practice have otherwise been impaired as a result of mere technical defects, the constitutional right to counsel is not violated and prejudice is not presumed. *See, e.g., United States v. Costanzo,* 740 F.2d 251 (3d Cir.1984) (failure to be admitted *pro hac vice* ), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985); *State v. White,* 101 N.M. 310, 313–14, 681 P.2d 736, 739–40 (1984) (failure of licensed out of state attorney to appear with in-state counsel, as per local rule); *Wilson v. People,* 652 P.2d 595 (Colo.1982) (failure to take the formal oath for membership in the bar), *cert. denied,* 459 U.S. 1218, 103 S.Ct. 1221, 75 L.Ed.2d 457 (1983). Where the attorney's license has been suspended or he/she has been disbarred for substantive violations, however, constitutional rights to counsel are violated and harm is presumed. *See, e.g., Solina,* 709 F.2d at 163–67; *Novak,* 903 F.2d at 887; *Felder,* 47 N.Y.2d at 293, 418 N.Y.S.2d at 297, 391 N.E.2d at 1276; *Ex Parte Williams,* 870 S.W.2d 343, 348 (Texas Ct.App.1994) ("Representation by a disbarred lawyer is tantamount to no legal representation at all. If a criminal defendant has no lawyer, prejudice is legally presumed in every case."); *People v. Hinkley,* 193 Cal.App.3d 383, 389, 238 Cal.Rptr. 272, 275 (1987) (attorney had been placed on an "inactive"

---

**4.** We also cited to a large number of similar decisions by other state and federal courts involving similar failures to pay bar dues. *See, e.g., Beto v. Barfield,* 391 F.2d 275 (5th Cir.1968); *People v. Medler,* 177 Cal.App.3d 927, 223 Cal.Rptr. 401 (1986); *People v. Garcia,* 147 Cal.App.3d 409, 195 Cal.Rptr. 138

(1983); *Dolan v. State,* 469 So.2d 142 (Fla. App.1985); *White v. State,* 464 So.2d 185 (Fla. App.1985); *Johnson v. State,* 225 Kan. 458, 590 P.2d 1082 (1979); *Jones v. State,* 747 S.W.2d 651 (Mo.App.1988); *Hill v. State,* 393 S.W.2d 901 (Tex.Crim.App.1965).

list prior to defendant's trial after both the state bar and an appellate court had determined that he was "incompetent to represent clients").

¶ 20 The present case, unlike *Jones* and *Bretz*, does not involve technical licensing defects, as we consider Papas' failure to fulfill his CLE requirements over an extended period of time to reflect directly on his lack of competence to practice law in this Commonwealth.[5] Our Supreme Court adopted the stringent requirements of the Pennsylvania Rules for Continuing Legal Education to "assure that lawyers admitted to practice in the Commonwealth continue their education to have and maintain the requisite knowledge and skill necessary to fulfill their professional responsibilities" and "to protect and secure the public's interest in competent legal representation." *Kohlman v. Western Pennsylvania Hosp.*, 438 Pa.Super. 352, 652 A.2d 849, 851 (1994) (case citations omitted), *appeal denied*, 541 Pa. 640, 663 A.2d 692 (1995); *Cole v. Price*, 758 A.2d 231, 233–34 (Pa.Super.2000), *reversed in part on other grounds*, 566 Pa. 79, 778 A.2d 621 (2001); *see also American Law Institute v. Commonwealth*, 882 A.2d 1088, 1092 (Pa. Commw.2005) ("[T]he purpose of continuing legal education is professional responsibility, which helps ensure that attorneys are able to discharge their duties to the public.").

¶ 21 Moreover, unlike a simple failure to pay bar dues, Papas could not have regained his status as an active member of the Pennsylvania bar merely by taking the required CLE classes. Instead, pursuant to the Pennsylvania Rules of Disciplinary Enforcement, Papas could have been reinstated only by formal order of our Supreme Court after a showing that he had "the moral qualifications, competency and learning in the law required for admission to practice in the Commonwealth." Pa. R.D.E. Rule 218(c)(3)(ii); *In re Rankin*, 583 Pa. 38, 42, 874 A.2d 1145, 1147 (2005). Given Papas' non-compliance with his CLE requirements, his failure to advise his clients of his inactive status (in violation of Pa.R.D.E. Rule 217), his willful violation of orders and directives from the Supreme Court and the Disciplinary Board, and his unlawful representation of clients while on inactive status (in violation of Pa.R.D.E. Rule 218 and 42 Pa.C.S.A. § 2524), the likelihood that he would have been reinstated to active status is doubtful.

¶ 22 Based upon the reasoning of the cases discussed hereinabove, including *Solina*, *Novak*, and *Felder*, we agree with Grant that Papas' conduct actually and/or

**5.** In this regard, we decline to follow *The People v. Ngo*, 14 Cal.4th 30, 57 Cal.Rptr.2d 456, 924 P.2d 97 (Cal.1996) and *State v. Lentz*, 844 So.2d 837 (La.2003), in which state courts in California and Louisiana refused to adopt *per se* rules granting a new trial to defendants represented by attorneys on inactive status due to non-compliance with CLE requirements. In *Ngo*, the California Supreme Court ruled that a *per se* rule was not appropriate since non-compliance with California's rules regarding continuing legal education could take effect as a result of simple clerical errors or other *de minimus* occurrences. *Ngo*, 14 Cal.4th 30, 57 Cal.Rptr.2d at 460, 924 P.2d at 101 ("[N]oncompliance may consist of a simple failure to submit proof of attendance at approved programs or to remit noncompliance fees, neither of which establishes incompetence. As such, an attorney's noncompliance *per se* is no reflection on his or her professional competence."). Similarly, in *Lentz*, the Supreme Court of Louisiana was also concerned about minor violations of bar regulations unrelated to professional competence. *Lentz*, 844 So.2d at 841 ("[T]he mere absence of one hour of professionalism for the prior year's CLE requirements does not automatically equate to ineffective assistance of counsel.").

In the case *sub judice*, in significant contrast to *Ngo* and *Lentz*, Papas' violations resulting in his inactive status are clearly not *de minimus* or the result of clerical errors.

constructively denied him the right to counsel under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Although we indicated in *Bretz* that an attorney's admission to the bar allows us to presume that he has the "training, knowledge, and ability to represent a client," we also held that this presumption may be rebutted where "additional factors" demonstrate that the attorney is not competent to practice law in this Commonwealth. *Bretz*, 830 A.2d at 1278. Such "additional factors" clearly exist in this case. By the time of trial in March 2004, Papas' license to practice law had been suspended for nearly three years (since April 2000), and under Pennsylvania law Papas was prohibited from practicing law. Moreover, by March 2004 Papas had not fulfilled his required CLE obligations for five years (since March 1999). Giving full credence to the importance of continuing legal education in this Commonwealth, a failure of this magnitude reflects directly on Papas' lack of competence to practice law in this Commonwealth. We consider the mandatory CLE requirements, as adopted by our Supreme Court, to constitute serious and essential obligations necessary for all lawyers in this Commonwealth to maintain the requisite skill and knowledge to provide effective representation to clients. As such, under the Sixth Amendment and Article I, Section 9 of the Pennsylvania Constitution, any person failing to comply for an extended period of time (in this case, five years) must be presumed to be incompetent to practice law in this Commonwealth and incapable of representing clients in our courtrooms.

¶ 23 In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Supreme Court concluded that the Sixth Amendment right to the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Id.* at 489, 98 S.Ct. 1173. Because Papas was neither licensed nor competent to practice law at the time of Grant's trial in March 2004, Grant's constitutional rights to the assistance of counsel were violated.[6] This violation may not be considered harmless error, and thus prejudice must be presumed *per se.*

¶ 24 At least two other states have also adopted a *per se* rule presuming prejudice in situations where an attorney is not licensed to practice law at the time of trial based upon serious violations of bar regulations reflecting an incompetence to practice law. *See Cantu v. State*, 897 S.W.2d 389 (Texas Ct.App.1994) (defendant denied his Sixth Amendment right to counsel where his attorney was suspended from practice at the time of trial); *Ohio v. Newcome*, 62 Ohio App.3d 619, 577 N.E.2d 125 (1989) (same). We recognize that some courts in other jurisdictions have declined to adopt a *per se* rule, reasoning that whether "a lawyer's services were ineffective [should be considered] on a case [by case], not a *per se*, basis." *See, e.g., United States v. Mouzin*, 785 F.2d 682, 697–98 (9th Cir.), *cert. denied*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986).[7] As our Supreme Court has recognized, however,

---

**6.** Because Grant was unaware of Papas' suspension, he could not possibly have competently and intelligently waived his right to counsel.

**7.** We acknowledge that this Court cited *Mouzin* with approval on this issue in *Commonwealth v. Vance*, 376 Pa.Super. 493, 546 A.2d

632, 637, *appeal denied*, 521 Pa. 620, 557 A.2d 723 (1989). This portion of our *Vance* decision was mere *obiter dicta*, however, since the attorney in *Vance* was a member in good standing of the bar during the trial and at sentencing.

"there are certain circumstances 'that are so likely to prejudice the accused that the cost of litigating the effect in a particular case is unjustified.'" *Reaves*, 592 Pa. at 148, 923 A.2d at 1128 (citing *Cronic*, 466 U.S. at 659–662, 104 S.Ct. 2039). We consider this case to be one such circumstance, since Grant was represented at trial by someone who had been suspended from the practice of law for nearly three years and had not taken a CLE class in five years. Representation by Papas did not fulfill the mandates of the Sixth Amendment or of Article I, Section 9 of the Pennsylvania Constitution.

¶ 25 For these reasons, the PCRA court erred in denying Grant's petition for relief. The order of the PCRA court dated April 4, 2008 is reversed.[8] The judgment of sentence dated August 16, 2004 is vacated and a new trial is hereby awarded. Case remanded. Jurisdiction relinquished.

---

8. Grant's second and third issues on appeal involve claims of ineffective assistance of counsel during his trial. Because we grant a new trial, these claims are now moot.