J-S23037-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| JOEL G. MUIR, | : | |
| Appellant | : | No. 1970 EDA 2014 |

Appeal from the PCRA Order Entered May 22, 2014,
in the Court of Common Pleas of Montgomery County,
Criminal Division, at No(s): CP-46-CR-0001707-2004

BEFORE: DONOHUE, SHOGAN, and STRASSBURGER, JJ.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED OCTOBER 27, 2015**

Joel G. Muir (Appellant) appeals from the order entered on May 22, 2014, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Counsel has filed a petition for leave to withdraw and no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  Upon review, we grant counsel's petition to withdraw and affirm the order of the PCRA court.

On direct appeal, this Court summarized the facts underlying this case.

> Around 2:00 a.m., on August 3, 2001, in the parking lot of the Sunnybrook Ballroom, [A]ppellant, co-defendant Nicholas Roberts, and two unidentified men, riding in a maroon Toyota Camry, approached one Rian Wallace, who was standing in the parking lot, and began yelling, "New York Crips."  The two unidentified men exited the vehicle and began doing a gang ritual dance around Wallace, purportedly alerting Wallace to the fact they were members of the Crips street gang.  Appellant then

*Retired Senior Judge assigned to the Superior Court.

also exited the car, and the three men surrounded Wallace. Shortly thereafter, two of Wallace's friends, the victim Michael Ziegler and Brandon Germany, arrived at the scene. No violence occurred during this confrontation.

Wallace then left the scene with a friend, followed 30 minutes later by Ziegler, Germany, and two other men, driving a gold Ford Taurus. After dropping off the other men at an acquaintance's house, Ziegler and Germany stopped briefly at a motel party, and then drove to the home of a friend, Janae Nixon. Ziegler parked on the street, and, according to Germany's testimony, [A]ppellant's maroon Toyota Camry with its lights turned out was also parked on that street. Co-defendant Roberts was seated in the driver's seat of the Camry, [A]ppellant was in the passenger's seat and two other individuals were in the backseat. Appellant sped past the victim's car, but returned 10 minutes later, at about 3:00 a.m., minus the two rear passengers. As [A]ppellant's car approached Nixon's home and the parked Taurus, Germany, Nixon and a second woman, Shena Beasley[,] were entering the Taurus. The victim already was seated at the wheel. With Germany in the passenger seat, the victim drove away, and [A]ppellant and Roberts, the driver of the Camry, followed. As Roberts sped past the Taurus, [A]ppellant, seated in the backseat, fired into the victim's vehicle, striking Ziegler in the head and killing him.

***Commonwealth v. Muir***, 909 A.2d 884 (Pa. Super. 2006) (unpublished memorandum at 1-3).

Appellant absconded to New York and was apprehended three years later. After a six-day trial, a jury found Appellant guilty of first-degree murder, as well as related offenses including conspiracy and possession of a firearm without a license. On December 29, 2004, Appellant was sentenced to two concurrent terms of life imprisonment for first-degree murder and conspiracy to commit first-degree murder, and three consecutive terms of

- 2 -

seven to fourteen years of incarceration for the other charges. This Court affirmed Appellant's judgment of sentence on August 23, 2006. **Muir**, **supra**. After a series of procedural turns,[1] our Supreme Court denied Appellant's petition for allowance of appeal on March 29, 2012. **Commonwealth v. Muir**, 42 A.3d 292 (Pa. 2012).

On December 18, 2012, Appellant timely filed a *pro se* PCRA petition. Henry S. Hilles, III, Esquire (Attorney Hilles) was appointed to represent Appellant. On September 30, 2013, Attorney Hilles filed a third amended PCRA petition, which stated that this petition "fully replaces the first and second amended PCRA petitions." Third Amended PCRA Petition, 9/30/2013, at ¶ 14. Appellant set forth one issue concerning trial counsel's ineffective assistance with respect to Appellant's right to testify on his own behalf. Specifically, Appellant argued that counsel misadvised Appellant that his prior non-*crimen falsi* convictions would be admissible if he chose to testify. Appellant also argued that trial counsel "refused" to permit Appellant to testify. **Id**. at ¶ 18.

An evidentiary hearing was held on January 22, 2014, and on May 22, 2014, the PCRA court denied Appellant's request for PCRA relief. On June

---

[1] These procedural turns included Appellant's being abandoned by counsel causing the reinstatement of Appellant's PCRA rights, followed by the grant of Appellant's PCRA petition which permitted him to file a petition for allowance of appeal to our Supreme Court from this Court's affirmance of his judgment of sentence.

23, 2014, Appellant timely filed a *pro se* notice of appeal.[2] On June 23, 2014, Attorney Hilles filed with the PCRA court a petition for leave to withdraw as counsel and no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).[3] On July 2, 2014, the PCRA court permitted counsel to withdraw. On July 18, 2014, Appellant filed "Objections" to the PCRA court's decision to allow Attorney Hilles to withdraw, essentially claiming that Attorney Hilles was ineffective for petitioning to withdraw as counsel at that juncture in the proceedings.

On appeal, we remanded the case for the appointment of new counsel, concluding that the PCRA court was without jurisdiction to permit counsel to withdraw after Appellant timely filed a notice of appeal. ***Commonwealth v.***

---

[2] Although Appellant's notice of appeal was not docketed until June 26, 2014, we consider it as being filed, at the latest, on June 23, 2014, the date stamped on the envelope, as Appellant is incarcerated. ***See Commonwealth v. Chambers***, 35 A.3d 34, 38 (Pa. Super. 2011) ("[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing."). Since the PCRA court order was filed on May 22, 2014, Appellant had until June 23, 2014 to file timely a notice of appeal. Thus, the instant appeal was filed timely under the prisoner mailbox rule.

[3] In that letter, Attorney Hilles advised Appellant that the deadline to file a notice of appeal was "today," meaning, the day Attorney Hilles sent the letter to Appellant. No-merit Letter, 6/23/2014, at 1. That letter also included a thorough analysis of the one issue presented in Appellant's PCRA petition, along with six issues Appellant specifically asked Attorney Hilles to review. Attorney Hilles concluded that none of these issues had merit warranting an appeal.

*Muir*, 1970 EDA 2014 (Pa. Super. filed May 29, 2015).  The PCRA court appointed new counsel, Melissa A. Lovett, Esquire, on June 8, 2015.  On July 20, 2015, Attorney Lovett filed with this Court a petition for leave to withdraw and no-merit letter pursuant to *Turner*/*Finley*.

We review such matters as follows.

> … *Turner*/*Finley* counsel must review the case zealously. *Turner*/*Finley* counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which the petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner:  (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> If counsel fails to satisfy the foregoing technical prerequisites of *Turner*/*Finley*, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw.  Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper *Turner*/*Finley* request or an advocate's brief.
>
> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of *Turner*/*Finley*, the court—trial court or this Court—must then conduct its own review of the merits of the case.  If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.  By contrast, if the claims appear to have merit, the court will deny counsel's request and grant relief, or at least instruct counsel to file an advocate's brief.

***Commonwealth v. Wrecks***, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

We are satisfied that counsel has complied with the technical requirements of ***Turner***/***Finley***.[4] We now consider all of the issues Appellant wishes us to review.

When we review the propriety of the PCRA court's order, we are limited to determining whether the court's findings are supported by the record and whether the order in question is free of legal error. ***Commonwealth v. Grant***, 992 A.2d 152, 156 (Pa. Super. 2010). This Court will not disturb the PCRA court's findings if there is any support for the findings in the certified record. ***Id.***

Moreover, in order to obtain relief based on a claim of ineffective assistance of counsel under the PCRA, the petitioner must prove that:

---

[4] On August 14, 2015, Appellant filed a *pro se* "Application for Clarification." In that application, Appellant states that this Court's prior opinion was "unclear and [did] not specify how or when Appellant is entitled to respond to counsel's no-merit letter filed before this Court." Application for Clarification, 8/14/2015, at ¶ 12. However, in compliance with the mandates of ***Turner***/***Finley***, Attorney Lovett specifically advised Appellant of the following: "[I]f PCRA counsel filed a ***Turner***/***Finley*** brief on appeal, the appellant has the right to file a brief advocating on his own behalf. … Therefore, you are allowed to proceed with your appeal *pro se* or with privately retained counsel if I am permitted to withdraw from your case." ***Turner***/***Finley*** letter, at 11. Thus, Appellant had the right to file with this Court a new *pro se* brief if he so desired. He did not do so; however, this Court has the brief he filed originally, which addresses all of the issues that could possibly be raised in this case. Moreover, issues of all PCRA counsel effectiveness will be addressed *infra*. Accordingly, Appellant's "Application for Clarification" is denied.

(1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. A failure to satisfy any one of the three prongs of the test for ineffectiveness requires rejection of the claim.

*Commonwealth v. Cam Ly*, 980 A.2d 61, 73 (Pa. 2009) (internal quotation marks and citations omitted).

To provide background for the issues presented in this appeal, we summarize the testimony presented at the PCRA hearing. Appellant testified about his version of the events that occurred on the night of the shooting and why he believes counsel was ineffective in failing to pursue the defense of self-defense. He testified that "everyone went to a party, [and] a little confrontation happened at the party." N.T., 1/22/2014, at 7. Codefendant Nicholas Roberts and Appellant were going to pick up Jeanae Nixon and Shena Beasly "to go hang out after the party." *Id*. However, when Appellant, who was sitting in the backseat, and Roberts arrived at Nixon's house, Brandon Germany and Michael Zeigler were there. Appellant and Roberts drove around the block, and Appellant called Nixon to see if Nixon

- 7 -

and Beasly were going to get in the car with them. Nixon informed Appellant that she and Beasly were going to go with Germany and Zeigler.

According to Appellant, Nixon and Beasly got into the car with Germany and Zeigler, and by "coincidence," Appellant and Roberts were driving behind them. *Id*. at 9. The front car stopped at a stop sign, and Roberts then "proceeded to go around them … because they stopped at a stop sign." *Id*. at 10. Appellant then testified as follows.

> So we going around to get past them to leave. As we coming around, okay, the way Michael Zeigler was, he was more, like, driving, like, slumped in the car. I see Brandon Germany with the gun, and he's pointing out the window. And I said something to the fact like, he got a hammer, and I pulled out, and I started firing. From there we left, all right.

*Id*. Appellant further testified that "[i]f Brandon Germany never pulled out a gun, this wouldn't have happened." *Id*. at 11.

Appellant also testified about the fact he did not testify at trial. He stated that at the time of the shooting, he "was on parole in New York for a gun and a drug charge." *Id*. at 14. He testified that trial counsel told him that the Commonwealth could use his criminal history against him to make him "look like a liar and destroy [his] credibility." *Id*. at 14-15. He was concerned they were going to make him "look like a liar and a bad person" because he had a "drug and gun charge." *Id*. at 15.

Trial counsel testified that Appellant never told trial counsel that Germany had a gun that night; however, Appellant did tell trial counsel that

Germany had a reputation for carrying a firearm. *Id*. at 26. Trial counsel also testified that he told Appellant that his drug conviction could not be introduced as evidence against him, but the gun conviction could potentially be used to demonstrate that Appellant had access to a firearm. *Id*. at 27. Additionally, trial counsel testified that, based on the information he had, the best available defense strategy was a combination of poor witness identification of the shooter because it was dark that night, along with Appellant's lack of motive to kill the victim. Trial counsel believed these strategies to be inconsistent with the idea of self-defense.

With this background in mind, we review the issues set forth the *Turner*/*Finley* letter to determine if we agree with counsel's conclusion that they are without merit. We first consider whether trial counsel was ineffective for purportedly advising Appellant not to testify because it would permit the Commonwealth to introduce evidence of Appellant's prior gun and drug convictions. *Turner/Finley* Letter, 7/15/2015, at 3 (unnumbered); Appellant's Brief at 38-44.

The PCRA court opined as follows.

[T]rial counsel credibly testified that [Appellant] had decided before trial that the best available defense strategy would be to challenge the reliability of the Commonwealth's eyewitness identification testimony intended to prove that it was, in fact, [Appellant] who was the man firing bullets from the backseat of the car. Second, trial counsel credibly testified that he never told [Appellant] that he could be impeached with a drug conviction…. Fourth, it is wholly incredible that [Appellant] would

fear proof he had access to a firearm while admitting to the jury that he not only had a firearm, but that he had it at the ready to defend himself upon being surprised to see someone in another moving car aiming to shoot him. Fifth, it is beyond belief that [Appellant] stood accused of having committed a cold-blooded, gangland style "hit" at point-blank range and was facing a lifetime in prison and that he nevertheless chose not to testify in his defense because he feared that the jury might judge him to be a "liar and a bad person." [Appellant] wholly failed to persuade [the PCRA court] that trial counsel committed a breach of his duty to provide effective representation that caused [Appellant] not to exercise his right to take the stand at trial and testify in his own defense.

PCRA Court Opinion, 8/22/2014, at 7-8 (citations omitted).

Instantly, the PCRA court credited trial counsel's testimony and discredited Appellant's testimony from the PCRA hearing. "The findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given great deference." **Commonwealth v. Jones**, 912 A.2d 268, 293 (Pa. 2006). Our review of the testimony from the hearing reveals that the PCRA court's conclusions are supported by competent evidence of record. Accordingly, we agree with counsel and the PCRA court that this issue is meritless.

Appellant's next three issues involve trial counsel's strategy. Specifically, Appellant argues that trial counsel should have pursued an

imperfect self-defense theory in this case. Appellant's Brief at 15-34, 45-54.

**Turner**/**Finley** Letter at 5-7, 8.[5]

> A defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. However, all other principles of self-defense must still be met in order to establish this defense. The requirements of self-defense are statutory: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). If "the defender did not reasonably believe deadly force was necessary [,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable." **Commonwealth v. Fowlin**, [] 710 A.2d 1130, 1134 ([Pa.] 1998). A successful claim of imperfect self-defense reduces murder to voluntary manslaughter.

**Commonwealth v. Truong**, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*) (some citations omitted).

Appellant's entire self-defense claim is premised on the fact that he purportedly saw Germany with a gun that night. However, trial counsel testified that Appellant never told him that he saw Germany with a gun that night. N.T., 1/22/2014, at 26. Moreover, trial counsel stated that "at the time of the shooting when the decedent was found and soon thereafter, all

---

[5] In addition to a general argument that self-defense was a better theory for the defense, Appellant argues that trial counsel was ineffective for failing to request a jury instruction for imperfect self-defense. **Turner**/**Finley** Letter at 5. Appellant also argues that trial counsel was ineffective for failing to investigate witnesses to support the theory of imperfect self-defense. **Id**. at 6.

the witnesses in the car denied having any evidence of Brandon Germany carrying a firearm." *Id*. at 29.

Trial counsel's testimony is supported by the evidence presented by the Commonwealth at trial. At trial, Germany testified he did not have a gun and also that nobody with him had a gun that he observed. N.T., 8/20/2004, at 48-9. Furthermore, both Beasly and Nixon testified that Brandon Germany did not have a gun. N.T., 8/19/2004, at 83, 162-63.

Thus, the crux of Appellant's argument, that he shot at the car in self defense, was utterly contrary to the other evidence presented at trial. We agree with the PCRA Court's conclusion that counsel's strategy, wherein he did not pursue self defense, was reasonable. Accordingly, trial counsel could not be ineffective for failing to request a jury instruction on this basis.

With respect to Appellant's claim that trial counsel failed to prepare adequately for the defense of self-defense by investigating relevant witnesses, we consider the following.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [**Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial....

> *Commonwealth v. Sneed*, 45 A.3d 1096, 1108–09 (Pa. 2012). "To demonstrate *Strickland* prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Sneed,* 45 A.3d at 1109. Counsel will not be found ineffective for failing to call a witness "unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.* (internal quotation marks and citations omitted).

*Commonwealth v. Matias*, 63 A.3d 807, 810-11 (Pa. Super. 2013).

Three of the witnesses that Appellant claims should have been interviewed to support this theory were Nixon, Beasly, and Germany. Appellant's Brief at 29-34. However, as detailed *supra*, all three witnesses testified that Germany did not have a gun that night; thus, that testimony would not have been helpful to the defense. Accordingly, Appellant's issue lacks arguable merit.

Appellant also claims that trial counsel was ineffective for failing to investigate two other fact witnesses, namely Patricia Whitehawk (also referred to as "Ms. Pat") and Larry Phillips. Appellant's Brief at 25-29. Specifically, Appellant argues that the testimony of Patricia Whitehawk would have established that Germany went to her house after the incident "brandishing a handgun and looking for Appellant." *Id*. at 25. At the PCRA hearing, trial counsel testified as follows.

> And I do recall us having a conversation about Ms. Pat in particular; so my investigator certainly would have attempted to

go and see Ms. Pat, and I do recall having a conversation about her. … My recollection was that I think there were several attempts to reach [Ms. Pat] to no avail and that was discussed with [Appellant] as well.

N.T., 1/22/2014, at 33.

Whitehawk "is now deceased" and therefore, Appellant could not receive a new trial on this basis, as Whitehawk is unavailable to testify. *Turner*/*Finley* Letter, at 6 (unnumbered). Moreover, the PCRA court believed trial counsel's testimony that he attempted to contact Whitehawk. Accordingly, Appellant cannot now meet the standards set forth in *Matias* to prevail on his ineffectiveness claim.

With respect to Larry Phillips, Appellant argues that he "was a first responder to the scene of the shooting" and provided a statement to police that he "saw a guy standing on the sidewalk with a gun." Appellant's Brief at 27-28. Appellant's *pro se* PCRA petition requests that the Commonwealth turn over to him "the statement from Commonwealth witness Larry Phillips." PCRA Petition, 12/28/2012, at 6. Our review of the record finds no other reference to Larry Phillips. Notably, in the *Turner*/*Finley* letter prepared by Attorney Hilles, there is no indication Appellant brought this witness to counsel's attention. *See* Petition to Withdraw, 6/23/2014, at Exhibit A. In that petition, Attorney Hilles states that Appellant "asked [him] to raise six (6) specific issues" and attached a *pro se* brief to file. *Id*. Attorney Hilles went on to explain why each of the claims is without merit. Absent from the

discussion of trial counsel's ineffective assistance for failure to call a potential witness is any reference to Larry Phillips. Moreover, Appellant's brief to this Court refers to Larry Phillips' statement to police as being in the reproduced record at page 17. Our review of the reproduced record reveals no page 17 of the reproduced record or any statement by Larry Phillips in it. Based on the foregoing, any issue with respect to Larry Phillips has been waived.

We now turn to Appellant's next argument where he contends that trial counsel was ineffective for failing to investigate and present character witnesses. Appellant's Brief at 34-38. Appellant asserts that counsel was ineffective in failing to contact Curtis Jack, Jamel Harris, and Joseph Bodrick.

> The failure to call character witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, appellant must prove: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Treiber***, 2015 WL 4886374, at *23 (Pa. August 17, 2015) (citations and quotations omitted).

The Rules of Evidence are specific as to what type of character evidence may be presented at trial.

> As a general rule, evidence of a person's character may not be admitted to show that individual acted in conformity with

- 15 -

that character on a particular occasion. Pa.R.E. 404(a). However, Pennsylvania Rule of Evidence 404(a)(1) provides an exception which allows a criminal defendant to offer evidence of his or her character traits which are pertinent to the crimes charged and allows the Commonwealth to rebut the same. Pa.R.E. 404(a)(1). This Court has further explained the limited purpose for which this evidence can be offered:

It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

It is clearly established that evidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt or innocence. Evidence of good character is substantive and positive evidence, not a mere make weight to be considered in a doubtful case, and, ... is an independent factor which may of itself engender reasonable doubt or produce a conclusion of innocence. **Evidence of good character offered by a defendant in a criminal prosecution must be limited to his _general reputation for the particular trait or traits of character_ involved in the commission of the crime charged**. The cross-examination of such witnesses by the Commonwealth must be limited to the same traits.

- 16 -

> Such evidence must relate to a period at or about the time the offense was committed, and **must be established by testimony of witnesses as to the *community opinion* of the individual in question, *not through specific acts* or mere rumor**.

***Commonwealth v. Johnson***, 27 A.3d 244, 247-48 (Pa. Super. 2011) (quoting ***Commonwealth v. Luther***, 463 A.2d 1073, 1077–78 (Pa. Super. 1983) (citations omitted) (emphasis added)).

Attached to his *pro se* PCRA petition were three identical affidavits from the aforementioned individuals. All three stated the following: "2. That I do know his past which involve some problems with the law but that I do not judge him because of that, I base my decision of his character on who he is as a person that I personally know." Affidavit of Curtis Jack, 6/12/2012; Affidavit of Jamel Harris, 6/4/2012; Affidavit of Joseph Bodrick, 5/14/2012.

These affidavits reveal that the testimony that these three individuals would offer was both irrelevant and inadmissible. The affidavits are void of any information that Appellant has a reputation for being law abiding and peaceful. Accordingly, "the absence of the testimony of the witness[es] was [not] so prejudicial as to have denied the defendant a fair trial." ***Treiber***, *supra*.

Appellant's final two issues relate to PCRA counsel's abandonment of Appellant on appeal. ***Turner***/***Finley*** Letter at 10-11; Appellant's Brief at 55-

65. This Court remedied that situation in its prior memorandum by remanding the case for the appointment of new counsel. New counsel was appointed, she filed a *Turner/Finley* no-merit letter, and now this Court has undertaken a thorough review of the issues. Accordingly, Appellant's claims about prior PCRA counsel's performance are moot.

In summary, we are reminded of the following. "A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued." *Commonwealth v. Washington*, 927 A.2d 586, 600 (Pa. 2007). Furthermore, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Commonwealth v. Carson*, 913 A.2d 220, 274 (Pa. 2006). While it may look now to Appellant that trial counsel should have pursued a self-defense theory in hopes that Appellant's conviction would be reduced to voluntary manslaughter, at the time of trial counsel's investigation, the evidence was not there to support such a defense. Based on the foregoing, we affirm the order of the PCRA court and grant counsel's petition to withdraw.

Order affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/27/2015