[Cite as *State v. Howze*, 2024-Ohio-5447.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JEREMY HOWZE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0002

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 22 CR 253

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed in part. Reversed, Vacated and Remanded in part.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Max Hersch*, Assistant Public Defender, Office of the Ohio Public Defender, for Defendant-Appellant.

Dated: November 18, 2024

**DICKEY, J.**

{¶1} Appellant, Jeremy Howze, appeals his convictions and sentence for one count of aggravated possession of drugs (methamphetamine, a schedule II drug) in violation of R.C. 2925.11(A) and (C)(1)(b) (in an amount in excess of the bulk amount but less than five times the bulk amount), a felony of the third degree (Count III); one count of trafficking in tramadol (a schedule IV drug) in violation of R.C. 2925.03(A)(2) and (C)(2)(b) (in an amount in excess of the bulk amount but less than five times the bulk amount), a felony of the fourth degree with a forfeiture specification pursuant to R.C. 2941.1417(A) (Count IV); and one count of possession of drugs (tramadol) in violation of R.C. 2925.11(A) and (C)(2)(b), a felony of the fourth degree (Count V) with a forfeiture specification pursuant to R.C. 2941.1417(A), following a jury trial in the Belmont County Court of Common Pleas.

{¶2} The trial court merged Counts IV and V, and imposed a sentence of thirty months for Count III and twelve months for Count IV, to be served consecutively, for an aggregate sentence of forty-two months. The trial court also ordered forfeiture of Appellant's Black 2014 Chrysler 300, VIN # XXXXXXXXXXXXXXXXX.

{¶3} Appellant advances three assignments of error. First, he contends he was denied his Sixth Amendment right to counsel because his attorney was suspended from the practice of law on the first day of the two-day trial for his failure to pay a monetary sanction imposed due to his lack of compliance with Continuing Legal Education ("CLE") requirements for the 2019/2020 biennium. Second, Appellant argues the omission of the felony level or the identification of the drug by schedule in the verdict form for Count III compels us to reduce his conviction for Count III to simple possession of drugs in violation of R.C. 2925.11(A) and (C)(2), a felony of the fourth degree, and remand the matter for resentencing. Finally, Appellant asserts, and the state concedes, the trial court erred in failing to undertake a proportionality review before ordering the forfeiture of Appellant's automobile.

{¶4} For the following reasons, Appellant's convictions and sentence are affirmed, but for the portion of the sentencing entry relating to forfeiture, which is reversed and vacated. Further, this matter is remanded for a hearing during which the trial court shall conduct a proportionality review.

Case No. 24 BE 0002

## FACTS AND PROCEDURAL HISTORY

{¶5}    The only testimony at trial was offered by two members of the drug interdiction unit of the Belmont County Sheriff's Department on behalf of the state. According to Detective Jason Schwarck, the interdiction unit regularly surveils local hotels notorious for high drug activity.  Detective Schwarck was on routine patrol on September 21, 2022 when he did a pass through of the Knights Inn in St. Clairsville, Ohio.  Detective Schwarck's interest was piqued by a relatively new black Chrysler 300 in the parking lot, as the other vehicles in the parking lot were much older. Further, the license plate revealed the Chrysler 300 was registered in Cuyahoga County, a known source of drugs being trafficked into Belmont County.  As a consequence, Detective Schwarck ran the license plate, which identified Appellant as the owner of the vehicle.  Detective Schwarck conducted no further surveillance, but "kept [the information] in the back of [his] mind." (Trial Tr., p. 175-176.)

{¶6}    The following day, Detective Schwarck was on routine patrol when he saw the same vehicle at Hilltop Sunoco, a gas station located roughly one-half mile from the Knights Inn.  Detective Schwarck drove his patrol car past the gas station, then surveilled the suspect vehicle.  The Chrysler 300 cut across Interstate 170 and drove to another gas station, A-Plus Fuel Mart.  Rather than entering the gas station lot, the vehicle stopped in the roadway.

{¶7}    Detective Schwarck pulled directly behind the Chrysler 300, prompting the driver of the Chrysler 300 to attempt to waive Detective Schwarck around the stopped vehicle.  Instead, Detective Schwarck activated his overhead lights and his body camera, then approached the vehicle on foot.

{¶8}    Appellant was in the driver's seat and Ernest Whitsett was in the passenger seat.   After a brief conversation to identify both occupants, Detective Schwarck told Appellant that Detective Schwarck would issue a written warning if there were no issues with Appellant's driver's license.

{¶9}    Detective Schwarck instructed Appellant to exit his vehicle.  Detective Schwarck testified he intended to ask Appellant to sit in the patrol car while Detective Schwarck completed the written warning.  Detective Schwarck explained he would be

distracted while completing the written warning and wanted to be certain Appellant did not have any weapons. Appellant consented to a pat down search.

{¶10} During the pat down search, Detective Schwarck felt something in Appellant's pocket. Appellant told Detective Schwarck that it was marijuana, but Detective Schwarck observed during his testimony that marijuana feels more like "leaves and stems," and the contents of Appellant's pocket "felt softer." (*Id.* at p. 189.) Detective Schwarck removed a plastic bag filled with white powder from Appellant's pocket, which Detective Schwarck believed was either cocaine or fentanyl. The plastic bag and its contents were weighed (3.32 grams) and subsequent lab testing established the substance was methamphetamine. The methamphetamine found in Appellant's pocket provides the basis for Count III of the Indictment.

{¶11} Based on the discovery of suspected illegal drugs in Appellant's pocket, Detective Schwarck, in conjunction with other law enforcement officers who had arrived at the scene, conducted a vehicle search. The search of the automobile yielded a backpack containing clothing, shoes, counterfeit currency, a mobile telephone, and twenty-two individual baggies of marijuana and blue pills wrapped in plastic in a plastic grocery store bag. The backpack was found on the backseat. The blue pills were weighed (120 grams) and subsequent lab testing established they were tramadol. The tramadol found in the backpack provide the basis for Counts IV and V of the Indictment.

{¶12} Appellant and Whitsett were arrested. Whitsett surrendered additional white powder and blue pills at the police station. The substances were weighed and subsequent lab testing established the white powder and pills were fentanyl, which provided the basis for Count I and II of the Indictment, for which Appellant was acquitted.

{¶13} According to the testimony of Belmont County Sheriff's Deputy Randy Stewart, Appellant returned to the jail the day following his arrest to recover property seized from the automobile, including the backpack and its legal contents. Deputy Stewart conceded on cross-examination that only the registered owner of the vehicle could request the release of its contents.

{¶14} Appellant was indicted for one count of trafficking in a fentanyl-related compound (a schedule I drug) in violation of R.C. 2925.03(A)(2) and (C)(9)(g) (greater than fifty grams but less than one hundred grams), a felony of the first degree with a

forfeiture specification pursuant to R.C. 2941.1417(A) (Count I); one count of possession of drugs (fentanyl-related compound) in violation of R.C. 2925.11(A) and (C)(11)(f) (greater than fifty grams but less than one hundred grams), a felony of the first degree with a forfeiture specification pursuant to R.C. 2941.1417(A) (Count II); one count of aggravated possession of drugs (methamphetamine), one count of trafficking in tramadol, and one count of possession of drugs (tramadol).

{¶15} Appellant's trial commenced on October 19, 2023 and concluded the following day.  The jury began its deliberations at 4:59 p.m. on the first day of trial. Court was adjourned at 7:05 p.m. after the jury indicated it could not return a unanimous verdict on one of the counts.  The following day, the court provided a supplemental charge regarding the deadlock pursuant to *Allen v. United States*, 164 U.S. 492 (1896) and jury deliberations resumed.

{¶16} Appellant was ultimately convicted of the charges predicated upon the methamphetamine found in his pocket (Count III) and the tramadol found in the backpack (Counts IV and V). Appellant was acquitted of the charges predicated upon the fentanyl surrendered by Whitsett at the Sheriff's Department.

{¶17}  The verdict form for Count III is divided in three parts.  The first part of the verdict form for Count III, captioned "VERDICT FORM 3 (Count III)," reads, in relevant part:

> We, the jury, being duly impaneled and sworn find Defendant *guilty* of committing the charge in Count III of Aggravated Possession of Drugs, Methamphetamine on or about September 22, 2022.

(Handwritten portion in italics.)

{¶18} The second part of the verdict form, captioned "VERDICT FORM 3A," addresses the amount of methamphetamine and reads, in relevant part:

> We, the jury, being duly impaneled and sworn and having found the defendant guilty in Count III, find that the amount of the methamphetamine *is* equal to or exceeds the bulk amount but is less than five times the bulk amount with bulk amount defined as three (3) grams.

(Handwritten portion in italics.)

**{¶19}** The third part of the verdict form, captioned "VERDICT FORM 3B," addresses forfeiture. There was no forfeiture specification charged with Count III. However, the jury did not find the vehicle was subject to forfeiture based on the methamphetamine found in Appellant's pocket, so the trial court's error in providing the errant verdict form is harmless error.

**{¶20}** The sentencing hearing was scheduled for November 27, 2023.

**{¶21}** Pursuant to an Ohio Supreme Court judgment entry dated October 20, 2023 (the second day of trial) and captioned "Administrative Actions Continuing-Legal-Education Matters," defense counsel was suspended from the practice of law for failure to comply with CLE requirements for the 2019/2020 biennium. The judgment entry reads, in relevant part:

> On October 19, 2023 [the first day of trial], the commission issued orders imposing monetary sanctions and suspending 16 attorneys [including defense counsel] for noncompliance with the provisions of Gov.Bar. R. X.
>
> . . .
>
> The following attorneys were sanctioned and suspended for not completing the requisite hours required by Gov. Bar. R. X(3) and not filing evidence of compliance or coming into compliance as required by Gov.Bar. R. X(18).
>
> The attorneys also have not paid the prior commission-ordered sanctions issued for non-compliance in the 2019/2020 compliance period.
>
> . . .

**{¶22}** It is undisputed that neither counsel nor the trial court was aware of defense counsel's suspension on either day of the trial. The judgment entry suspending defense counsel was filed on the second day of trial, but memorializes orders of suspension issued on the first day of trial.

Case No. 24 BE 0002

**{¶23}** On November 21, 2023, defense counsel filed a motion for continuance of the November 27, 2023 sentencing hearing due to his suspension from the practice of law. The motion reads, in relevant part:

> Now comes the undersigned Counsel for the defendant and requests this Honorable Court continue the sentencing hearing currently scheduled for November 27, 2023 for the following reason: Counsel was recently informed that he is under suspension from the practice of law based on the failure to pay a $150 sanction from the 2020 C.L.E. filing (See attached). Counsel was unaware of the issue, which arose during COVID and involved his filing of his C.L.E. hours late, via computer. Counsel has paid his sanction, the reinstatement fee, filed his compliance with his C.L.E. requirements, and paid his registration. Counsel anticipates being reinstated very shortly once the Supreme Court receives these (sent priority mail on Nov. 20th), but as of today, Nov. 22 [sic] he is still suspended and unable to appear in Court.

**{¶24}** The motion was granted and sentencing was rescheduled to January 2, 2024. Defense counsel was reinstated to the practice of law on November 28, 2023.

**{¶25}** On December 22, 2023, Attorney Pierce C. Walker filed a notice of appearance on Appellant's behalf. That same day, Appellant filed a motion for new trial pursuant to Crim.R. 33(A)(1) (irregularity in the proceedings denying the defendant a fair trial) and (3) (accident or surprise which ordinary prudence could not have guarded against), predicated upon original defense counsel's suspension from the practice of law during the two-day trial.

**{¶26}** Original defense counsel filed a motion to withdraw as counsel on January 2, 2024. He explained that his representation had been terminated by Appellant's family and all attempts at contact with Appellant had been futile. Original defense counsel further explained that he had been hospitalized on New Year's Day for influenza and an ear infection, and was currently recuperating at home, but was available for telephone or video appearance if the trial court deemed his appearance necessary.

{¶27} The state filed a response brief to the motion for new trial on January 16, 2024. That same day, the trial court conducted oral argument.

{¶28} In a judgment entry dated January 18, 2024, the trial court overruled the motion for new trial. The trial court applied the ineffective assistance of counsel standard first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and concluded original defense counsel's representation did not fall below an objective standard of reasonable representation, and Appellant suffered no outcome-determinative prejudice as a result of original defense counsel's suspension.

{¶29} At the sentencing hearing on February 12, 2024, the trial court merged Counts IV and V, and imposed a sentence of thirty months for Count III and twelve months for Count IV, to be served consecutively, for an aggregate sentence of forty-two months. Further, the trial court stated without objection, "[Appellant's] vehicle is hereby ordered forfeited, pursuant to the jury finding of that specification." (2/12/24 Sent. Hrg. Tr., p. 19.) With respect to forfeiture, the sentencing entry reads, in relevant part, "[p]ursuant to the Jury verdict, [Appellant's] Black 2014 Chrysler 300, VIN # XXXXXXXXXXXXXXXX , is hereby forfeited to the Belmont County Sheriff's Office."

{¶30} This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**[APPELLANT] WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN HE WAS REPRESENTED BY AN UNLICENSED ATTORNEY DURING TRIAL. U.S. CONST., AMEND. VI; CRIM.R. 33; *UNITED STATES V. CHRONIC.* 466 U.S. 648 (1984); *STATE V. J.R.,* 2022-OHIO-1664 (8TH DIST.)(JAN. 18, 2024 JOURNAL ENTRY.)**

{¶31} Generally, to establish a violation of the right to counsel, the defendant must show that: (1) counsel's performance fell below an objective standard of reasonable representation; and (2) counsel's errors resulted in prejudice, that is, a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.

{¶32} In *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court recognized a "narrow exception" to the *Strickland* requirements when considering whether a criminal defendant was denied his or her right to counsel under the Sixth Amendment. The Court held there are certain circumstances "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," such that ineffectiveness and prejudice are presumed and a denial of an accused's Sixth Amendment right to counsel is found "without inquiry into the actual conduct" of the proceedings. *Cronic* at 658-660.

{¶33} These circumstances include: (1) the complete denial of counsel, i.e., such as where counsel is "totally absent, or prevented from assisting the accused during a critical stage of the proceeding;" (2) circumstances where counsel "entirely fails" to subject the state's case to "meaningful adversarial testing;" (3) circumstances where counsel "actively represented conflicting interests;" and (4) circumstances where "although counsel is available to assist the accused," "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *Id.* at 658-660 and fn. 25, 28, *see also Strickland* at 692 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

{¶34} In the context of criminal proceedings, courts have consistently recognized that "a layman masquerading as an attorney," i.e., a person who has never been properly licensed to practice law in any jurisdiction, or who obtained admission to the bar by fraudulent means, cannot be considered "counsel" under the Sixth Amendment regardless of the legal skill exercised. Representation of a defendant by such an "attorney" is generally found to be a per se violation of the defendant's Sixth Amendment right to counsel, without the need to establish *Strickland's* requirements. *See, e.g.*, *United States v. Solina*, 709 F.2d 160, 166-169 (2d Cir. 1983); *United States v. Novak*, 903 F.2d 883 (2d Cir. 1990); *Huckelbury v. State*, 337 So.2d 400, 402-403 (Fla. App. 1976); *People v. Felder*, 47 N.Y.2d 287, 291, 293 (1979).

{¶35} Some courts have held "a per se rule of ineffectiveness" is warranted only where counsel has never been admitted to practice in any jurisdiction. *See*, *e.g.*, *United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000) (declining "to extend the per se

ineffectiveness rule beyond those cases in which a defendant is represented by a person never properly admitted to any bar" and holding that "the fact of suspension does not, by itself, render counsel ineffective under the Sixth Amendment"); *United States v. Watson*, 479 F.3d 607, 611 (8th Cir. 2007) (declining "to extend a per se ineffective assistance of counsel rule to cases where the defendant was represented by a trained and qualified attorney, albeit one with licensing problems"); *see also Elfgeeh v. United States*, 681 F.3d 89, 93 (2d Cir. 2012) (extending the "per se ineffectiveness rule" to representation by an individual, who prior to the representation in question, had been disbarred in all jurisdictions in which he or she had once been admitted).

**{¶36}** Other courts have similarly distinguished "technical" licensing defects and "administrative" suspensions versus "serious" or "substantive" violations in considering whether representation by a suspended or unlicensed attorney is a per se violation of an accused's right to counsel under the Sixth Amendment. *See, e.g.*, *Solina*, 709 F.2d at 167; *Novak*, 903 F.2d at 888-890; *see also People v. Gamino*, 362 Ill. Dec. 605, ¶ 21-22 (2012) ("a criminal defendant who is unknowingly represented by an individual who has been disbarred or suspended from the practice of law for any reason relating to lack of legal ability or moral character suffers a per se violation of his sixth amendment right to effective assistance of counsel"); *but see Com. v. Grant*, 2010 PA Super 45, ¶ 19-20 (attorney could not have been reinstated merely by taking the required CLE classes, but only by formal order of Supreme Court after a showing that he had "the moral qualifications, competency and learning in the law required for admission to practice in the Commonwealth").

**{¶37}** Most courts that have considered the issue have found no per se violation where a properly licensed attorney is suspended for the nonpayment of registration fees. *See*, *e.g.*, *Beto v. Barfield*, 391 F.2d 275 (5th Cir. 1968); *United States v. Dumas*, 796 F. Supp. 42, 45-46 (D. Mass. 1992); *People v. Medler*, 177 Cal. App.3d 927 (1986); *Dolan v. State*, 469 So.2d 142 (Fla. App. 1985); *Cornwell v. Dodd*, 270 Ga. 411, 412, 509 S.E.2d 919 (1999); *People v. Brigham*, 151 Ill.2d 58, 63-64 (1992); *Johnson v. State*, 225 Kan. 458 (1979); *Jones v. State*, 747 S.W.2d 651, 654-655 (Mo. App. 1988); *State v. Vanderpool*, 286 Neb. 111, 124 (2013); *New Jersey v. Green*, 274 N.J. Super. 15 (N.J. App. 1994); *People v. Kieser*, 79 N.Y.2d 936, 1175 (1992); *Commonwealth v. Bretz*, 2003

PA Super 298; *Hill v. State*, 393 S.W.2d 901 (Tex. Crim. App. 1965); *but see People v. Brewer*, 88 Mich.App. 756, 761-762, 279 N.W.2d 307 (1979) (although recognizing that the alleged suspension of defendant's attorney for failure to pay his bar dues did not make out a per se case of ineffective assistance of counsel, remanding for an evidentiary hearing to determine whether the allegations were correct and whether the defendant had received inadequate assistance of counsel due to "the implications, in terms of quality of representation, arising out of counsel's having neglected to pay his annual dues").

**{¶38}** Appellant contends original defense counsel's representation while under suspension constitutes a per se violation of Appellant's Sixth Amendment right to counsel. He cites a recent decision from the Eighth District Court of Appeals, *State v. J.R.*, 2022-Ohio-1664 (8th Dist.), in which the Eighth District concluded an attorney's failure to comply with CLE requirements for more than five years constituted a per se violation of his client's Sixth Amendment right to counsel. The Eighth District reasoned:

> The stated purpose of Ohio's continuing legal education requirement is "to maintain and improve the quality of legal and judicial services in Ohio." Gov.Bar R. X(1)(A). Compliance with continuing legal education requirements is an important and essential obligation of each attorney licensed to practice law in this state, to ensure that Ohio attorneys maintain the knowledge and skills necessary to provide effective assistance to clients. Giving due consideration to the importance and role of continuing legal education in this state, we believe "a failure of this magnitude" also "reflects directly on [Brooks'] lack of competence to practice law" here. *See* [*State v.*] *Gra*nt, 2010 Pa. Super. 45, 992 A.2d 152, at ¶ 22 ("any person failing to comply [with continuing legal education requirements] for an extended period of time * * * must be presumed to be incompetent to practice law in this Commonwealth and incapable of representing clients in our courtrooms"). Where, as here, an attorney repeatedly fails to comply with basic registration and continuing legal education requirements, one cannot help but question whether the attorney is providing competent legal representation, including exercising reasonable judgment, paying sufficient attention to issues pertinent to the representation and giving an accused

proper legal advice. If an attorney cannot be bothered to comply with these most basic requirements of practicing law in the state, how can we have confidence that the attorney is effectively representing his or her juvenile clients?

*Id.* at ¶ 54.

**{¶39}** Here, original trial counsel's license was suspended for ten days. According to the motion to continue the sentencing hearing, he had complied with the CLE requirement in 2020, but failed to pay a monetary sanction imposed for failing to timely provide the required information. Original defense counsel's license was reinstated immediately following the payment of the fine.

**{¶40}** Unlike the attorney in the Eighth District case, original trial counsel's CLE violation was quickly resolved in 2020, but for the payment of the fine. After receiving notification that his license had been suspended in 2023, original trial counsel expeditiously paid the fine in order to have his license reinstated.

**{¶41}** Appellant argues this matter should be remanded due to the dearth of information surrounding original trial counsel's 2019/2020 CLE violation, and his failure to pay the outstanding fine until his license was suspended. Appellant argues original trial counsel's failure to pay the financial sanction may have been willful. However, Appellant's new counsel could have requested an evidentiary hearing on the motion for new trial.

**{¶42}** Based on the record before us, we find the facts in this case do not establish a per se violation. Original trial counsel failed to accurately report his hours to the Supreme Court, which resulted in a monetary fine. However, his failure to pay the fine does not rise to the level of the ongoing CLE violations committed in *Brooks*, *supra*. Therefore, we cannot conclude Appellant's Sixth Amendment right to counsel was violated without consideration of legal representation provided during the trial.

**{¶43}** Turning to the *Strickland* test, Appellant has failed to demonstrate original defense counsel's performance was deficient or Appellant suffered any prejudice as a consequence of original defense counsel's representation. Accordingly, we find no violation of Appellant's Sixth Amendment right to counsel, per se or otherwise, and further find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**DUE TO A DEFICIENCY IN THE VERDICT FORM, [APPELLANT'S] CONVICTION FOR THIRD-DEGREE AGGRAVATED POSSESSION OF DRUGS MUST BE REDUCED TO FOURTH-DEGREE SIMPLE POSSESSION OF DRUGS. R.C. 2945.75(A); *STATE V. PELFREY*, 2007-OHIO-256; *STATE V. MCDONALD,* 2013-OHIO-5042 (OCT. 20, 2023 VERDICT FORMS.)**

{¶44} In Count III, Appellant was charged with one count of aggravated possession of drugs (methamphetamine, a schedule II drug) in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third degree. R.C. 2925.11, captioned "Drug possession offenses," reads in relevant part:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

. . .

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

(b) If the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is a felony of the third degree, and there is a presumption for a prison term for the offense.

. . .

(2) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of possession of drugs. The penalty for the offense shall be determined as follows:

. . .

(b) If the amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, possession of drugs is a felony of the fourth degree, and division (C) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

**{¶45}** Appellant was charged in Count III with aggravated possession of drugs based on the fact that the substance found in his pocket was methamphetamine, a schedule II drug. VERDICT FORM 3 (Count III), reads, in relevant part:

We, the jury, being duly impaneled and sworn find Defendant *guilty* of committing the charge in Count III of Aggravated Possession of Drugs, Methamphetamine on or about September 22, 2022.

(Handwritten portion in italics.)

**{¶46}** "VERDICT FORM 3A," reads, in relevant part:

We, the jury, being duly impaneled and sworn and having found the defendant guilty in Count III, find that the amount of the methamphetamine

Case No. 24 BE 0002

*is* equal to or exceeds the bulk amount but is less than five times the bulk
amount with bulk amount defined as three (3) grams.

(Handwritten portion in italics.)

**{¶47}** Appellant contends the verdict forms for Count III were insufficient to support his conviction for third-degree aggravated possession of drugs (as it omits the degree of the offense charged or the fact that methamphetamine is a schedule II drug), and his conviction must be reduced to fourth-degree possession of drugs (criminalizing possession of the same amount of schedule II, IV, and V drugs). Appellant's argument is predicated upon R.C. 2945.75(A)(2), which provides:

> (A) When the presence of one or more additional elements makes an offense one of more serious degree:
>
> . . .
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

R.C. 2945.75(A)(2).

**{¶48}** "Pursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted, or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 2007-Ohio-256, syllabus. There is no dispute that the verdict forms do not identify methamphetamine as a Schedule II drug or the charged crime as a felony of the third degree. Appellant argues that R.C. 2925.11(C)(1) criminalizes possession of Schedule I and II drugs, not methamphetamine by name. As a consequence, Appellant contends the verdict forms were required to include either the degree of the offense or "a statement that an aggravating element has

been found" [that Appellant possessed a Schedule II drug] to justify convicting [Appellant] of a greater degree of possession of drugs."

**{¶49}** In *Pelfrey*, the defendant was charged with tampering with records, which was a felony of the third degree based on the allegation that Pelfrey tampered with a government record. Because the verdict failed to indicate the charged crime was a third-degree felony, and in the alternative, did not contain the additional element (tampering with government records), the Ohio Supreme Court reduced Pelfrey's tampering with records conviction to a misdemeanor. *Id.* at ¶ 13-15.

**{¶50}** The *Pelfrey* Court opined the express requirement of the statute cannot be satisfied by demonstrating additional circumstances, such as overwhelming evidence at trial on the additional element, language in the verdict saying the indictment is incorporated, or a failure to raise the inadequacy of the verdict to the trial court. *Id.* at ¶ 14. The Supreme Court predicated its conclusion on the plain language of the statute and the express statutory consequences of a failure to comply, emphasizing R.C. 2945.75(A)(2) sets forth the required contents of verdict forms and explicitly provides "what must occur if this requirement is not met," that is, the guilty verdict will only constitute a finding of guilt on the least degree of the offense charged. *Id.* at ¶ 12. Further, the *Pelfrey* Court rejected the state's argument regarding waiver based on Pelfrey's failure to raise the issue before the trial court, declining to apply the discretionary plain error standard.

**{¶51}** Five years after *Pelfrey*, the Supreme Court engaged in an about-face in *State v. Eafford*, 2012-Ohio-2224, finding the defendant forfeited all but plain error by not objecting to a jury verdict form finding him guilty of "Possession of Drugs in violation of [section] 2925.11(A) of the Ohio Revised Code, as charged in Count Two of the Indictment" without naming the drug as cocaine in the verdict. Despite the fact that the Ohio Supreme Court reversed the Eighth District's decision, which was wholly predicated on the rule announced in *Pelfrey,* the *Eafford* Court did not even endeavor to reconcile its seemingly-contradictory conclusion with its precedent.

**{¶52}** The *Eafford* Court reasoned:

> Count Two of the indictment charged Eafford with possession of
> cocaine, the state provided testimony that he possessed cocaine, and the

jury returned its verdict on the only verdict form the court submitted to it. That verdict form reflected a finding of guilty as charged in Count Two of the indictment, referring to possession of cocaine. Thus, Eafford has not shown that but for the use of this verdict form, the outcome of the trial would have been different. Had he made a timely objection, the court could have modified the verdict form, but Eafford still would have been found guilty of possession of cocaine, because the only evidence in the case demonstrated his possession of cocaine, as he did not offer any defense in this case.

*Id.* at ¶ 19.

**{¶53}** The following year, the Supreme Court reaffirmed the rule announced in *Pelfrey* in *State v. McDonald*, 2013-Ohio-5042. The Court observed: "*Pelfrey* makes clear that in cases involving offenses for which the addition of an element or elements can elevate the offense to a more serious degree, the verdict form itself is the only relevant thing to consider in determining whether the dictates of R.C. 2945.75 have been followed." *McDonald* at ¶ 17.

**{¶54}** In *McDonald*, the verdict read that the defendant was guilty of "failure to comply with an order or signal of a police officer and caused a substantial risk of serious physical harm to persons or property." McDonald was charged with a violation of R.C. 2921.331(B), which converts a subsection (A) violation from a misdemeanor to a third-degree felony where the defendant willfully eludes or flees after receiving a visible or audible signal from a police officer to stop the defendant's vehicle, and there was a substantial risk of serious physical harm to persons or property. The Ohio Supreme Court found the verdict insufficient to constitute a finding of guilt on the felony offense because it did not include the element "operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." *McDonald* at ¶ 19-26, 33 (reversing and remanding for the trial court to enter a judgment convicting the defendant of a first-degree misdemeanor).

{¶55} Until *McDonald*, some courts reviewed a violation of R.C. 2945.75(A)(2) as waivable, subject only to a plain error review of the entire record in accordance with *Eafford*. Following *McDonald*, we have applied the rule in *Pelfrey/McDonald* to verdict form challenges. *See State v. Thomas*, 2021-Ohio-2350 (7th Dist.); *State v. Barnette*, 2014-Ohio-5405 (7th Dist.).

{¶56} Turning to VERDICT FORM 3A, the charged crime of "aggravated possession of drugs" is plainly identified and so is the charged drug of "methamphetamine." The rule announced in *Pelfrey* applies to crimes that share the same name despite the fact that crimes include different elements which affect the degree of the charged crime. We have recognized, "[t]he statute does not involve a lesser included offense analysis or an analysis for allied offenses of similar import for merger purposes. R.C. 2945.75(A)(2) 'applies to different degree levels within "an offense," not to different offenses altogether.' " *Thomas, supra,* at ¶ 33, quoting *State v. Evans*, 2015-Ohio-3161, ¶ 11 (2d Dist.). Here, the statute distinguishes "aggravated possession of drugs" from "possession of drugs" based on the charged drug.

{¶57} In *Thomas,* we concluded a verdict form simply finding Thomas guilty of "burglary," was insufficient to support Appellant's conviction for second-degree burglary. The burglary statute reads in relevant part:

> (D) Whoever violates division (A) of this section is guilty of burglary. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.

> (E) Whoever violates division (B) of this section is guilty of trespass in a habitation when a person is present or likely to be present, a felony of the fourth degree.

R.C. 2911.12 (D)-(E).

{¶58} Thomas argued the trial court should have reduced his conviction to a felony of the fourth degree, as that was the least degree of the offense charged. However, we reduced Thomas's conviction to a felony of the third degree because burglary is "a

different offense altogether" than trespass in a habitation when a person is present or likely to be present. *Thomas, supra,* at ¶ 33. We reasoned, "[t]he legislature plainly and unambiguously identified the offense in division (B) as something other than burglary." *Id.* at ¶ 34.

**{¶59}** The same is true here. The legislature clearly distinguished "aggravated possession of drugs" from "possession of drugs." Consequently, we find R.C. 2945.75(A)(2) does not apply, because "aggravated possession of drugs" is "a different offense altogether" than simple possession of drugs.

**{¶60}** Even assuming R.C. 2945.75(A)(2) applies, VERDICT FORM 3A does not identify methamphetamine as a schedule II drug, but does identify the charged drug as "methamphetamine." The identification of that particular drug is the element that raises the charged crime from simple possession of drugs (Schedule III, IV, V drugs) to aggravated possession of drugs (Schedule I and II drugs). Moreover, VERDICT FORM 3A finds Appellant guilty of "aggravated possession of drugs." Accordingly, in the alternative, we find the verdict contained a statement that the aggravating element had been found to justify convicting a defendant of a greater degree of a criminal offense.

**{¶61}** In summary, Appellant has failed to demonstrate the verdict for Count III violates R.C. 2945.75(A)(2). Therefore, this Court finds Appellant's second assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED WHEN IT ORDERED THE FORFEITURE OF [APPELLANT'S] CHRYSLER WITHOUT DETERMINING WHETHER ITS ORDER WAS PROPORTIONATE TO THE OFFENSES. R. C. 2981.04(B); R.C. 2981.09(A); *STATE V. LUONG*, 2012-OHIO-4520 (12TH DIST.). (FEB. 12, 2024 SENTENCING T.P. 19; FEB. 14, 2024 SENTENCING ENTRY.)**

**{¶62}** R.C. Chapter 2981.01, et seq., codifies procedures that must be followed to effectuate the forfeiture of seized property. R.C. 2981.02 sets forth the property subject to forfeiture and provides, in relevant part:

(A)(1) The following property is subject to forfeiture to the state or a political subdivision under either the criminal or delinquency process in section 2981.04 of the Revised Code or the civil process in section 2981.05 of the Revised Code:

. . .

(c) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

(i) A felony;

R.C. 2981.02(A).

{¶63} R.C. 2981.04, which governs forfeiture specifications, states, in relevant part:

If a person pleads guilty to . . . an offense . . . and the complaint, indictment, or information charging the offense . . . contains a specification covering property subject to forfeiture under section 2981.02 of the Revised Code, the trier of fact shall determine whether the person's property shall be forfeited. If the state . . . proves by clear and convincing evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code, after a proportionality review under section 2981.09 of the Revised Code when relevant, the trier of fact shall return a verdict of forfeiture that specifically describes the extent of the property subject to forfeiture.

R.C. 2981.04(B).

{¶64} In turn, R.C. 2981.09 sets forth the standard for a proportionality determination, stating, in relevant part:

Case No. 24 BE 0002

(A) Property may not be forfeited as an instrumentality under this chapter to the extent that the amount or value of the property is disproportionate to the severity of the offense. The state or political subdivision shall have the burden of going forward with the evidence and the burden to prove by clear and convincing evidence that the amount or value of the property subject to forfeiture is proportionate to the severity of the offense.

R.C. 2981.09(A).  R.C. 2981.09(C) provides a nonexhaustive list of factors that the trial court must consider in determining the severity of the offense.  For instance, the trial court must consider "[t]he seriousness of the offense and its impact on the community, including the duration of the activity and the harm caused or intended by the person whose property is subject to forfeiture [,]" and "[t]he extent to which the person whose property is subject to forfeiture participated in the offense." R.C. 2981.09(C)(1) and (2).

{¶65}  The proportionality review required by R.C. 2981.04(B) and 2981.09(A) is mandated by the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution, because the forfeiture of property is a form of punishment for a specified offense and thus is a "fine" for purposes of the United States and Ohio Constitutions. *State v. Hill*, 70 Ohio St.3d 25, 32-35 (1994).

{¶66}  The factors set forth in R.C. 2981.09(C) closely follow the factors a trial court must consider in determining whether forfeiture "is grossly disproportionate to the seriousness of the offense," and therefore constitutes an "excessive fine" within the meaning of the Eighth Amendment. *Hill* at 33, quoting *United States v. Sarbello*, 985 F.2d 716, 724 (3rd Cir.1993) ("lower court's proportionality analysis ' * * * must necessarily accommodate the facts of the case and weigh the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach, against the severity of the criminal sanction.' ")

{¶67} Ohio courts have consistently acknowledged forfeitures are not favored in law or equity, and forfeiture statutes must be strictly construed against the state.  *State v. Gerken*, 2023-Ohio-2244, ¶ 43 (6th Dist.) (interpreting R.C 4511.19(G)(1)(d)(v) – OVI forfeiture statute), citing *State v. Lilliock*, 70 Ohio St.2d 23, 26, (1982), superseded by statute on other grounds (interpreting former R.C. 2933.41 – disposition of property held

by law enforcement agency); *State v. Knapp*, 2003-Ohio-532 (9th Dist.) (strictly construing applicable OVI forfeiture statute); *State v. Forney*, 2013-Ohio-3458, ¶ 18 (2d Dist.); *State v. King*, 2009-Ohio-2812, ¶ 12 (12th Dist.); *State v. Singletary*, 7th Dist. No. 98 C.A. 107, 1999 WL 1138569, *4 (Dec. 9, 1999) (interpreting former R.C. 2933.41).

**{¶68}** The trial court did not conduct a proportionality review.  The state concedes the trial court erred in failing to conduct a review prior to ordering forfeiture of the Chrysler 300, and the proper remedy is to vacate the forfeiture order and remand the matter for a hearing pursuant to R.C. 2981.09.  Accordingly, we find Appellant's third assignment of error has merit.

## CONCLUSION

**{¶69}** For the foregoing reasons, Appellant's convictions and sentence are affirmed, but for the portion of the sentencing entry relating to forfeiture, which is reversed and vacated.  This matter is remanded for a hearing during which the trial court shall conduct a proportionality review.

Robb, P.J., concurs.

Hanni, J., concurs.

Case No. 24 BE 0002

_____

For the reasons stated in the Opinion rendered herein, we find only the third assignment of error has merit.  It is the final judgment and order of this Court that Appellant's convictions and sentence are affirmed, however, the portion of the sentencing entry relating to forfeiture is reversed and vacated.  We hereby remand this matter to the Court of Common Pleas of Belmont County, Ohio, for a hearing on a proportionality review.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**